420 S.E.2d 552

PEOPLES SECURITY LIFE INSUR-
ANCE COMPANY, a North Carolina
Corporation, Plaintiff Below, Appellee,

v.

Virginia Louise CURRENCE; Virginia
Louise Currence, Administratrix of the
Estate of Phyllis Wildman; Charles
William Reel, Jr.; Cynthia Dawn Reel,
Administratrix of the Estate of Richard
Allen Reel; John Allen Wildman; John
Allen Wildman, Administrator of the
Estate of Allan L. Wildman; Lori L.
Wildman, Defendants Below, Appellees,

Shawna L. Wildman, Defendant
Below, Appellant.

AETNA LIFE INSURANCE COMPANY,
Plaintiff Below, Appellee,

v.

Virginia Louise CURRENCE; Virginia
Louise Currence, Administratrix of the
Estate of Phyllis Wildman; Charles
William Reel, Jr.; Cynthia Dawn Reel,
Administratrix of the Estate of Richard
Allen Reel; John Allen Wildman; John
Allen Wildman, Administrator of the
Estate of Allan L. Wildman; Lori L.
Wildman; Unknown Heirs at Law
and/or Children of Phyllis I. Wildman,
Deceased, and Allen L. Wildman, De-
ceased, Defendants Below, Appellees,

Shawna L. Wildman, Defendant
Below, Appellant.

No. 20461.

Supreme Court of Appeals of
West Virginia.

Submitted April 29, 1992.

Decided June 11, 1992.

Daniel R. James, Barr & James, Keyser,
for appellant.

David W. Hart, Elkins, for the appellee,
Virginia Louise Currence.

David A. Sims, Wallace, Ross & Harris,
Elkins, for the appellee, Aetna Life Ins. Co.

**562**

PER CURIAM:

This is an appeal by Shawna L. Wildman, the daughter of Allan Wildman, deceased, from orders in two cases relating to the distribution of proceeds from two life insurance policies issued on the life of the appellant's father, Allan Wildman. The Circuit Court of Randolph County ruled that the estate of Phyllis I. Wildman, the deceased wife of Allan Wildman, was entitled to the proceeds rather than the appellant, Shawna L. Wildman. On appeal, Shawna L. Wildman contends that the circuit court erred in ruling that the estate of Phyllis I. Wildman was entitled to the life insurance proceeds and claims that she, Shawna L. Wildman, is entitled to the proceeds. After examining the questions presented and the documents filed, this Court agrees. Accordingly, the judgment of the Circuit Court of Randolph County is reversed.

On June 19, 1987, Allan Wildman obtained a life insurance policy from Peoples Security Life Insurance Company under which the insurance company agreed to pay his named beneficiary the proceeds of the policy upon his death.[1] At the time Allan Wildman obtained the insurance policy, he designated his wife, Phyllis I. Wildman, as his beneficiary.

Sometime later, Allan Wildman obtained a second life insurance policy on his life. This policy for $35,000.00 was issued by the Aetna Life Insurance Company. Like the policy issued by Peoples Security Life Insurance Company, the Aetna policy provided that the proceeds would be paid to Allan Wildman's designated beneficiary. At the time Allan Wildman entered into the contract with Aetna Life Insurance Company, he designated his wife, Phyllis I. Wildman as his primary beneficiary, and further designated the appellant, Shawna L. Wildman, who was his daughter by a prior marriage, as the contingent beneficiary who would receive the proceeds in the event that Phyllis I. Wildman failed to survive him.

On April 10, 1989, Allan Wildman changed the beneficiary designation on the policy issued by the Peoples Security Life Insurance Company from his wife to the appellant, Shawna L. Wildman. Later that day, Allan Wildman shot his wife, Phyllis I. Wildman, and one of her children by a prior marriage to death. He then committed suicide. Evidence adduced in the proceedings now before the Court conclusively showed that Phyllis I. Wildman died immediately upon being shot and that she died before Allan Wildman committed suicide.[2]

Following the death of Allan Wildman, the Peoples Security Life Insurance Company instituted one of the proceedings now before the Court, a declaratory judgment action, in the Circuit Court of Randolph County to determine who was entitled to the proceeds of the insurance policy which it had issued on the life of Allan Wildman. On January 26, 1990, Aetna Life Insurance Company instituted a similar declaratory judgment action.

After conducting hearings in the declaratory judgment actions, and after receiving briefs filed by the various interested parties in the matters, the Circuit Court of Randolph County, on April 29, 1991, issued ruling in the Peoples Security Life Insurance Company case. In the ruling, the court noted that on April 10, 1989, Allan Wildman had shot and killed his wife, Phyllis I. Wildman, and had then committed suicide by shooting himself. The court further stated:

> The gunshot wound to the abdomen of Phyllis Irene Wildman would have resulted in her death within one or two minutes and the gunshot wound to her head would have caused immediate death.
> The gunshot wound to the head of Allan Lee Wildman would have caused immediate death.
> If Allan Lee Wildman shot Phyllis Irene Wildman, then Phyllis Irene Wildman died before Allan Lee Wildman.

1. The policy was for $50,000.00, but contained a standard suicide clause which provided that if Mr. Wildman committed suicide within two years of the policy date, the insurer would pay only a sum equal to the premiums paid.

2. That evidence consists of an affidavit prepared by Dr. James L. Frost, the physician who conducted autopsies on both Allan Wildman and Phyllis I. Wildman. That affidavit states:

West Virginia Code section 42–4–2 indicates that "no person who has been convicted of feloniously killing another, or of conspiracy of the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or property to which the person so convicted would otherwise have been entitled *shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against...*"

The court found that it was a fundamental rule that no man should be permitted to profit by his own wrong and that it was a settled principle of equity that a constructive trust could be imposed upon assets acquired by the commission of a wrong.

The court concluded that Phyllis Wildman constructively survived her husband and that her estate was entitled to the proceeds of the Peoples Life Insurance Company policy issued on Allan Wildman's life. In a similar order entered on the same day, the court also found that under the same principles the estate of Phyllis I. Wildman was entitled to the proceeds from the policy issued by the Aetna Life Insurance Company.

In the present proceeding, Shawna L. Wildman contends that the trial court erred in depriving her of the proceeds of the insurance policies involved in this appeal.

As previously indicated, at the time Allan Wildman committed suicide, Shawna L. Wildman, the appellant, was the designated beneficiary on the life insurance policy issued by Peoples Security Life Insurance Company due to the change that Allan Wildman had made on the designation of beneficiary of that policy. The appellant, Shawna L. Wildman, was also the contingent beneficiary who, under the language of the insurance contract issued by Aetna Life Insurance Company, was entitled to receive the proceeds under the Aetna Policy in the event that Phyllis I. Wildman died

prior to Allan Wildman. Also, as previously indicated, Phyllis I. Wildman, according to the conclusive evidence adduced in this matter, died before Allan Wildman.

■ Under basic principles of contract law, the appellant, Shawna L. Wildman, being the legally designated surviving beneficiary under the two policies ordinarily should be the individual entitled to receive the benefit of those policies. The rule is set forth in syllabus point 4 of *Hamilton v. McLain*, 83 W.Va. 433, 98 S.E. 445 (1919), as follows:

The right of a beneficiary lawfully appointed to such benefits is in its inception inchoate but becomes consummate on the death of the insured and cannot be thereafter waived or abrogated by the insurer or otherwise changed unless absolved by some positive rule of law.

However, the trial court decided that because of the language of *W.Va.Code*, 42–4–2, and certain related equitable principles, the appellant, Shawna L. Wildman, should be deprived of the benefit of the policies and the proceeds should go to the estate of Phyllis L. Wildman.

*West Virginia Code*, 42–4–2, does, in effect, bar a person who is feloniously convicted of killing another from inheriting or taking insurance proceeds from the individual killed. The exact language of the statute states:

No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of law or equity the money or the property would pass to some other person or persons.

In cases interpreting this statute, it has been rather clearly indicated that this statute applies only when one is convicted of feloniously killing another or of conspiracy in the killing of another. As stated in *John Alden Life Insurance Company v. Doe*, 658 F.Supp. 638 (S.D.W.Va.1987): "It is clear that the applicability of the above statute is conditioned upon a conviction." *See Metropolitan Life Insurance Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934).

In the cases cited, while it is recognized that for the statute to apply there must be a conviction of the felonious killing of another or conspiracy in the killing of another, the statute is not the only source of law which bars an individual who kills another from taking from the other. For instance, in the *Metropolitan Life Insurance Co. v. Hill* case, while conceding that the statute did not bar a person convicted of involuntary manslaughter, a nonfelonious killing, from receiving the proceeds of the policy; the Court concluded principles of common law barred a beneficiary who intentionally caused the death of the insured from taking, whether the killing was felonious or not. The Court further stated:

> Unlawful intentional causation of the death of an insured by the beneficiary named in the insurance policy, whether felonious or not, is the test of the common-law rule barring the beneficiary from the proceeds of the policy.

Syl. pt. 1, *Metropolitan Life Insurance Co. v. Hill, Id.*

Somewhat similarly, in *McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197 (1991), the Court held that a woman, although never convicted of killing or conspiring to kill her husband, and thus not barred from taking under *W.Va.Code*, 42–4–2, could, nonetheless, not inherit from the estate or recover as a beneficiary under life insurance policies if it was proven in a civil action that she had intentionally killed her husband.

In discussing the West Virginia law, the Federal District Court for the Southern District of West Virginia in the *John Alden Life Insurance Company* case concluded that the lack of a conviction is likewise not conclusive under common law and that where the evidence clearly shows that an individual was involved in a homicide, even though that person was not convicted of killing the other, the person who was involved in the homicide legally could, under general common law principles, be barred from taking from the insured.

In the *John Alden Life Insurance Company* case, the beneficiary died before she could be tried or consequently convicted in the homicide of her husband, and her heirs were attempting to reach the proceeds of the policy of the man in whose homicide she was involved. The court concluded that the general common law rule that a beneficiary who feloniously kills the insured cannot take under a policy also precludes an individual who is claiming through the beneficiary or under him from also taking under the policy. In reaching this proposition, the court quoted with approval the principles set forth in 44 Am. Jur.2d *Insurance*, § 1717, pp. 702–03 (1982), that:

> The general rule that a beneficiary who feloniously kills the insured cannot take under the policy also precludes one claiming through or under him from likewise taking under the policy.

*See also, Wickline v. Phoenix Mutual Life Insurance Co.*, 106 W.Va. 424, 145 S.E. 743 (1928).

Apparently relying upon these principles, the circuit court in the present cases denied the appellant, Shawna L. Wildman, the right to participate in the proceeds of the policies issued on her father, Allan Wildman, because he had killed his wife, Phyllis I. Wildman.

In arguing against the appellant's entitlement to the proceeds in the present cases, the appellees rely to a considerable extent on the holding of the California court in *Estate of Jeffers*, 134 Cal.App.3d 729, 182 Cal.Rptr. 300 (1982). In that case, a wife was the owner of policies of insurance on the lives of her husband and herself and designated herself as beneficiary of the proceeds if she survived her husband by thirty days. By will she designated a trust for her children as the alternative

beneficiary of the proceeds. After designating the trust for her children as the alternate beneficiary, the wife shot and killed her husband and on the same day shot and killed herself. The California court, invoking law similar to West Virginia's, held that to allow the wife to designate or specify the recipient of the proceeds and thereby profit from killing her husband would be improper and that the proceeds should be deemed to be constructively held as a constructive trust for the benefit of the insured husband's estate. In *Estate of Jeffers*, the California court quoted with approval the early case of *Meyer v. Johnson*, 115 Cal.App. 646, 2 P.2d 456 (1931), where the court stated the rationale behind the general rule barring an individual from profiting from his own wrong. The court stated:

> If the rule were that the personal representatives of murderously inclined beneficiaries might take money made bloody by the slaying of those inclined to generosity, how many individuals who now walk the streets might ride in Rolls–Royces or emulate the eagle in his dizzy flight? By such a rule many a beneficiary, aged or infirm, and contemplating a young and healthful assured, would be tempted to commit a crime which would enrich his heirs, although it were too late to enrich himself. Indeed, many a man has committed atrocious crimes for the benefit of his children.

*Meyer v. Johnson, Id.* at 650, 2 P.2d at 456.

The case presently before this Court is starkly different from all the cases cited above. In each of the above cases, an insured party was the victim of a homicide, and the homicide was the act which created the corpus of money in dispute. In the present case, Phyllis I. Wildman, the murdered individual, was not the insured and her death did not generate the corpus of money in dispute. Rather, Allan Wildman, the murderer, was the insured, and it was his suicide, rather than his killing of Phyllis I. Wildman, which gave rise to the money in dispute.

In the present case, it was completely unnecessary for Allan Wildman to kill Phyllis I. Wildman to generate the property corpus in issue. All that he needed to do was to commit suicide.

■ As indicated in *John Alden Life Insurance Co. v. Doe, supra,* and *Metropolitan Life Insurance Co. v. Hill, supra,* before *W.Va.Code,* 42–4–2, may be invoked to bar a beneficiary from collecting under a life insurance policy, there must be a conviction of a felony. Also, by its terms the statute bars a killer from taking or acquiring "any money or property, real or personal, or interest therein, from the one killed or conspired against...."

In this Court's view, the Circuit Court of Randolph County erred in concluding that the Code section applies to the situation in the present case. As previously indicated, the case law holds that for the statute to apply there must be a conviction, a circumstance which did not occur in the present case. Also, the statute bars a killer from taking property from the individual killed, and as previously stated, the death of Phyllis I. Wildman did not generate the property in question.

As stated in *Metropolitan Life Insurance Co. v. Hill, supra,* in addition to *W.Va.Code,* 42–4–2, common law and equitable principles can bar one who intentionally causes the death of another from taking from the one killed. However, that rule, like the statutory rule, appears to apply only where the death of the one killed creates the property corpus which is in dispute. In the many cases discussed in annot., 27 A.L.R.3d 794 (1969), and related annotations, that appears to be the broad rule in the United States.

■ Since Allan Wildman was the individual insured in the present case, and since his suicide, rather than the death of Phyllis I. Wildman, was the fact which gave rise to the obligation of the insurance companies to pay, this Court believes that the trial court erred in holding that the appellant, who was the designated living beneficiary at the time of Allan Wildman's death, was barred under statutory or common law or equitable principles from collecting under the insurance policies in issue.

As previously stated, syllabus point 4 of *Hamilton v. McLain, supra,* indicates that a lawfully appointed beneficiary's entitlement to insurance proceeds cannot be abrogated except by some positive rule of law. The Court cannot find any rule of law which should abrogate the entitlement of the appellant, who was in no way whatsoever implicated in the death of Phyllis I. Wildman, to the insurance proceeds in question and cannot conclude that the Peoples Security Life Insurance Company and the Aetna Life Insurance Company can be absolved by any rule of law from paying the proceeds to the designated beneficiary, the appellant, Shawna L. Wildman.

The declaratory judgment rulings of the Circuit Court of Randolph County are, therefore, reversed and this case is remanded with directions that the circuit court declare that Shawna L. Wildman is entitled to the proceeds of the insurance policies in issue in the present proceeding.

Reversed and remanded, with directions.